UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AC2T, INC. d/b/a SPARTAN MOSQUITO, | : | |
| Plaintiff, | : | NO.  19-CV-5946-RBS |
| v. | : | |
| COLIN PURRINGTON, | : | **ORAL ARGUMENT REQUESTED** |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant Colin Purrington submits this memorandum of law in support of his motion to dismiss the complaint of AC2T, Inc. d/b/a Spartan Mosquito ("Spartan"), dated December 16, 2019 (the "Complaint" or "Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

In this lawsuit, Spartan seeks to use its superior financial resources to silence a former college professor who has been exercising his constitutional rights to petition his government and advocate on an important environmental and public health issue: the effectiveness of commercially available mosquito control devices.  In Mr. Purrington's opinion, based upon his personal evaluation of Spartan's product and his scientific knowledge, Spartan has made false and misleading claims about the efficacy of its product, thereby violating federal environmental regulations and potentially endangering public health.  Most of the statements that Spartan cites in the Complaint reflect Mr. Purrington's efforts to reach federal and state officials with information about Spartan's misleading and false claims concerning the efficacy of its product.  The remaining statements reflect Mr. Purrington's efforts to raise public awareness of the matters about which he is petitioning, describe his own opinions, or contain facts that Spartan does not, and cannot, deny are true.  Applicable law does not provide Spartan with a valid claim against Mr. Purrington under

those circumstances.  Notably, even if Spartan could show that Mr. Purrington should be liable for his statements, Spartan fails to plead facts that would suggest it has incurred even a cent of damage to its business to justify its claims.  That omission suggests that Spartan has sued merely to intimidate Mr. Purrington rather than to recover any demonstrable damage to its business.  For those reasons, Mr. Purrington respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

## STATEMENT OF FACTS

Colin Purrington is a resident of Swarthmore, Pennsylvania and a former associate professor of biology at Swarthmore College.  *See* Compl. ¶ 2, 7.  He maintains a blog on which he posts on a variety of topics, and is also active in posting on social media, including Facebook and Twitter.  *See* Compl. ¶¶ 6, 12.

In 2019, Mr. Purrington became interested in a product called the Spartan Mosquito Eradicator, which is manufactured and sold by plaintiff Spartan.  *See* Compl. ¶¶ 5-6, 9, 11.  Spartan alleges that Mr. Purrington made "approximately 150 statements" concerning Spartan or the Spartan Mosquito Eradicator on the websites Amazon.com, Facebook.com, Twitter.com, and on his own blog.  Compl. ¶ 12.  Spartan further contends that those statements are false and defamatory.  Compl. ¶ 5.  Notably, however, Spartan nowhere alleges that certain key facts are untrue: that Mr. Purrington is a scientist, that he conducted an evaluation of the Spartan Mosquito Eradicator, and that the solution contained inside Spartan's product is a simple mixture of water, sugar, salt, and yeast.  *See* Compl. ¶¶ 14-25 (listing numerous purportedly false statements, but failing to challenge the accuracy of statements concerning Mr. Purrington's profession or the components of Spartan's product).

In the Complaint, Spartan specifically identifies several statements upon which it bases its claims, including a Facebook post that states:

The Spartan Mosquito Eradicator is a complete scam.  I'm a scientist and have evaluated them carefully.  I found that mosquitos are not attracted to the devices at all.  And I've corresponded with over 100 scientists and public health officials who all agree that the devices attract nothing but fruit flies, ants, picnic beetles, and yellowjackets.  And everyone agrees that the solution inside (water, sugar, salt, and yeast) wouldn't kill mosquitos even IF mosquitos managed to get inside (the holes are too small).  Indeed, professionals openly laugh about this device and speculate why so many people leave glowing testimonials.  But, sadly, it's not just a waste of money – it puts people at risk of contracting mosquito-borne diseases.  I.e., if a person relies on this device instead of, say, DEET, they are putting themselves and their families at increased risk of getting bitten by a mosquito carrying EEE, West Nile, etc.  This company is an embarrassment to the state of Mississippi, which should have never allowed it to operate in the first place.  It should be shut down, and several states (perhaps all) are planning to do exactly that.  I hope that happens before they start selling the things in Africa.

Compl. ¶¶ 8, 13, Ex. A.  Spartan also complains about various statements that it alleges Purrington made on Twitter, including the following tweets:

- "The reason citizens and organizations should write to their state officials *now* is because Spartan Mosquito must reapply to each state by Dec 31st for permission to sell.  Please send your input today.  Contact info: [graphic] . . . . Why should states issue 'stop sell' orders on scams like the Spartan Mosquito Eradicator?  Because such devices are putting people's health at risk.  The Association of American Pesticide Control Officials has detailed guidance for state regulators here: [graphic]"  Compl. Ex. B;

- "This might be related to the efforts by @EPA and @amazon to remove items that violate the Federal Insecticide, Fungicide & Rodenticide Act.  Spartan Mosquito and distributors often make health claims, e.g., which violate the FIFRA 25(b) exemption it enjoys . . . Here are four examples showing how Spartan Mosquito Eradicator,

distributors, and resellers push the idea that the devices protect against mosquito-borne diseases.  All in clear violation of the FIFRA 25(b) exemption.[1]"  Compl. Ex. C;

- "Spartan Mosquito Eradicators provide ideal habitat (water, sugar, yeast) for larvae of spotted-wing drosophila (Drosophila suzukii), an invasive pest of berries and soft-skinned fruit trees.  Once mature they escape through holes in the cap."  Compl. Ex. D;

- "Spartan Mosquito Eradicator operates in a regulatory loophole, though, because it *doesn't* contain a regulated pesticide.  If it had actual insecticide it would absolutely need to convince regulators that the device killed mosquitos.  It's a successful scheme."  Compl. Ex. F;

- "The above claim suggests Spartan Mosquito misled states in @eparegion2, @eparegion3, @USEPASoutheast, @EPAregion6, @EPAregion7, @EPAregion9, and @EPAnorthwest when it declared sodium chloride is the active ingredient that kills mosquitos (an equally inane idea)."  Compl. Ex. G.

Spartan also complains about posts that it alleges Purrington made on Amazon.com:

- "Just a word of caution about adding the ingredients yourself: it still will not work. The design is flawed in so many ways it seems as if the owners of the company didn't even care."  Compl. Ex. I;

- "I've never seen a mosquito inside my Spartan Mosquito Eradicators and I've also never seen a mosquito near it or on it.  I looked through the company's website,

---

[1] The Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") section 25(b) exemption provides that "minimum risk" pesticides with certain active ingredients, such as salt, are exempt from regulation under FIFRA.  To qualify for this exemption, among other things, the product must not have labeling that contains false or misleading information or health claims.  *See* http:www.epa.gov/minimum-risk-pesticides/conditions-minimum-risk-pesticides (last visited Mar. 24, 2020); *see also* 40 C.F.R. § 152.25(f).

Facebook page, and Instagram account and there's not a photograph of a mosquito going through one of those holes.  It's all a fiction to get gullible people to buy it." Compl. Ex. J;

- "You can also complain to Amazon directly.  Just state that the seller has used deceptive advertising and that the product doesn't work." Compl. Ex. K.

Finally, Spartan complains about two other Facebook postings that it alleges Mr. Purrington made:

- "Here's a movie of the insects that ARE trapped inside a Spartan Mosquito Eradicator. Yes, there are larvae inside.  Alive.  And some of them are spotted-wing drosophila, an invasive pest of berries in the United States.  So these devices are contributing to the spread of a pest.  [Video]." Compl. Ex. E;

- "Amazon has recently concluded that the Spartan Mosquito Eradicator is a scam and have pulled the device.  It's still available at feed stores around the country, and I assume people will keep buying it at those locations.  It would be great to get the word out to the public so that people don't try to protect themselves from mosquito-borne diseases with Spartan Mosquito Eradicators.  I don't think the feed stores are going to inform customers." Compl. Ex. H.

Spartan nowhere details any pecuniary damage that it has incurred by reason of the purportedly false statements, pleading only in a conclusory fashion that "Plaintiff has suffered damages." Compl. ¶¶ 27, 33, 39.

## ARGUMENT

The Complaint should be dismissed in its entirety because either (1) Spartan cannot maintain a claim based on the cited statements under the *Noerr-Pennington* doctrine or Pennsylvania's Environmental Immunity Act, or (2) the statements are opinion and therefore

cannot form the basis for a defamation claim.  Moreover, a plaintiff must plead facts in its complaint that "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 503 (E.D. Pa. 2018).  Although allegations of fact must be accepted by the Court as true on a motion to dismiss, legal conclusions couched as facts need not be considered true.  *GOLO, LLC*, 310 F. Supp. 3d at 503 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Thus, Spartan's conclusory allegation that it has suffered "damages" is not sufficient to plead its claim for commercial disparagement. Finally, Spartan cannot maintain this action because it is not registered to do business in Pennsylvania.  For all those reasons, the Court should dismiss this action.

I.      Spartan's Claims Are Barred By The *Noerr-Pennington* Doctrine

The alleged defamatory statements are communications either made directly to government entities or to encourage third parties to petition their own local government; Spartan's claims are therefore barred by the *Noerr-Pennington* doctrine, because Mr. Purrington's speech is protected speech.  The *Noerr-Pennington* doctrine arises from the First Amendment right to "petition the Government for a redress of grievances."  *BE & K Constr. Co. v. Nat'l Labor Relations Bd.*, 536 U.S. 516, 524-25 (2002).  It provides immunity from statutory and common-law claims arising from activities carried out to petition the government for redress, including to bring non-compliance with applicable law to the attention of appropriate authorities.  *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 159-60 (3d Cir. 1988); *see also Caixa Geral de Depositos, S.A. v. Rodrigues*, 2005 WL 1541055, at *10 (D.N.J. June 30, 2005) (applying *Noerr-Pennington* to defamation claim); *O'Neill v. Rossum*, 2018 WL 4233573, at *3, 7-9 (Pa. Super. Ct. Sept. 6, 2018) (affirming order dismissing claims for defamation and commercial disparagement under the *Noerr-Pennington* doctrine).  Mr. Purrington's statements are petitioning activity and therefore cannot serve as a basis for a claim for either defamation or commercial disparagement.

PHIL1 8757010v.2

First, each of the tweets contained in exhibits B, C, F, and G and the Facebook post in exhibit A are either addressed directly to the government or were posted on social media to encourage other citizens to petition the government; claims based on such statements are barred by the *Noerr-Pennington* doctrine.   In *O'Neill v. Rossum*, the Pennsylvania Superior Court considered an appeal of a dismissal under *Noerr-Pennington* of claims for commercial disparagement and defamation brought against the Delaware Riverkeeper Network ("DRN"), an environmental group.   *O'Neill*, 2018 WL 4233573, at \*1, 3.   The plaintiff in *O'Neill* intended to build a housing development on land contaminated with chlorine solvents.   *Id*. at \*2.   The developer alleged, in support of its defamation and commercial disparagement claims, that DRN had "engaged in a campaign of misinformation" against the development through communications to residents and the government concerning the dangers of building on a contaminated site.   *Id*.   In upholding the trial court's dismissal of those claims, the Superior Court held that the *Noerr-Pennington* doctrine applied to public statements aimed at obtaining government redress, even when the statements are made "outside of government proceedings."   *Id*. at \*8.

Here, Mr. Purrington similarly is disseminating information via social media to government agencies and the community in an effort to oppose what he believes are ineffective devices for mosquito control that put the environment and public health at risk.   In the tweet attached to the Complaint as Exhibit B, for example, Mr. Purrington writes that "citizens and organizations should write to their state officials."   Compl. Ex. B.   In the tweets at Exhibit C, Mr. Purrington tags the United States Environmental Protection Agency ("EPA") in a series of tweets that explain his view about how Spartan's product does not comply with FIFRA.   Compl. Ex. C.   In a series of tweets in Exhibit F, Mr. Purrington explains that Spartan has utilized a loophole to avoid the need to demonstrate the efficacy of its product to regulators.   Compl. ¶ 8,

PHIL1 8757010v.2

Ex. F.  In Exhibit G, Mr. Purrington tags numerous regional offices of the EPA, communicating to them his opinion that Spartan made misleading statements.  Compl. Ex. G.  Finally, in Exhibit A, Mr. Purrington provides his rationale for opposing the sale of Spartan's product and ends with a call for it to be "shut down" by regulators.  *See* Compl. Ex. A.  All of those communications seek redress directly from the government, or encourage fellow citizens to seek redress from the government, and Spartan therefore cannot maintain its claims against Mr. Purrington on the basis of those statements.  *O'Neill*, 2018 WL 4233573, at \*3, 7-9.

Although the remaining statements are not addressed directly to a government entity, they are part of Mr. Purrington's efforts to raise awareness of the issue upon which he is engaged in petitioning the government, and therefore are also protected by *Noerr-Pennington*.  As the court held in *O'Neill*, activities ancillary to a petition to the government – such as communications to fellow citizens on the issue addressed in the petition – are also constitutionally protected speech. *O'Neill*, 2018 WL 4233573, at \*8; *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933-34 (9th Cir. 2006) (holding that the Petitioning Clause requires the preservation of "breathing space for the effective exercise of rights it protects" and that therefore "a party may not be subjected to liability for conduct intimately related to its petitioning activities").  The remaining statements that Spartan cites in its complaint are intimately related to his petitioning activity because they inform the public that he was imploring to "write to their state officials" of the reasons why such petitioning is necessary.  *See*, *e.g.*, Compl. Exs. D & E (explaining that Spartan's product could contribute to the spread of invasive species); Compl. Ex. H (explaining that people who rely upon Spartan's product to protect themselves from mosquito-borne diseases may be risking their health).  Accordingly, claims Spartan brings are barred by the *Noerr-Pennington* doctrine in their entirety, and should be dismissed.

II.     Certain of Spartan's Claims Are Barred By Pennsylvania's Environmental Immunity Act

To the extent that Spartan's claims rest on communications Mr. Purrington made to governmental authorities, those claims are also barred by Pennsylvania's Environmental Immunity Act.  Under that law, "a person that, pursuant to Federal or State law . . . makes an oral or written communication to a government agency relating to enforcement or implementation of an environmental law or regulation shall be immune from civil liability in any resulting legal proceeding for damages where the action or communication is aimed at procuring favorable governmental action."  27 Pa. C.S.A. § 8302(a).  "Immunity is triggered if, and only if, the communication is aimed at procuring favorable government action, regardless of whether the communication is made directly to the government or to third parties."  *Penllyn Greene Assocs., L.P. v. Clouser*, 890 A.2d 424, 434 (Pa. Commw. Ct. 2005).  Thus, "[i]f the communications made to third parties are the equivalent of communicating to the government, the communications deserve the immunity provided by the Act."  *Id*.  Again, many of the statements quoted by Spartan in its complaint qualify for immunity under this statute.

As described above, the statements that appear in Exhibits C and Exhibit G to the Complaint are direct communications to the EPA concerning the enforcement of an environmental law, FIFRA.  *See* Compl. Ex. C and Ex. G.  Moreover, as also described above, the other communications addressed in the Complaint are ancillary communications aimed at the same goal. *See supra*, § II.  Accordingly, the Pennsylvania Environmental Immunity Act provides Mr. Purrington with immunity from any liability that may be imposed in this suit concerning those statements, and the Complaint should be dismissed in its entirety.  *See Penllyn Greene Assocs.*, 890 A.2d at 434.  In the alternative, the Court should grant Mr. Purrington a hearing to determine the preliminary issue of immunity under the Environmental Immunity Act.  27 Pa. C.S.A. § 8303.

PHIL1 8757010v.2

III.    Plaintiff's Claims Fail Because Purrington's Statements Are Opinion

Spartan also cannot succeed on its defamation claim, because the communications it relies upon are statements of opinion.  A claim for defamation under Pennsylvania law requires the proponent to plead sufficient facts to support the following elements: "(1) The defamatory character of the communication.  (2) Its publication by defendant.  (3) Its application to the plaintiff. (4)  The understanding by the recipient of its defamatory meaning.  (5) The understanding by the recipient of it as intended to be applied to the plaintiff.  (6) Special harm resulting to the plaintiff from its publication.  (7) Abuse of a conditionally privileged occasion."  42 Pa. C.S.A. § 8343; *see also Barbieri v. Wells Fargo & Co*., 2014 WL 7330461, at *7 (E.D. Pa. Dec. 22, 2014) (Surrick, J.).  "Expressions of opinions, that rise only to the level of annoyance or embarrassment, do not provide a basis for a defamation claim."  *Kreimer v. Phila. Inquirer, Inc*., 2004 WL 1196258, at *2 (E.D. Pa. May 27, 2004) (Surrick, J.) (citing *Parano v. O'Connor*, 641 A.2d 607, 574-75 (Pa. Super. Ct. 1994)).  Here, the thrust of Spartan's claim is that it believes that its product works to "substantially reduce a local mosquito population," while Mr. Purrington's scientific opinion is that it does not.  *See* Compl. ¶¶ 10, 14-25.  Indeed, Mr. Purrington's statements are couched in the language of scientific opinion, reflecting that he "evaluated carefully" and "found that mosquitos are not attracted to the devices."  Compl. ¶ 13.  Other statements appear in the language of pure policy opinion: "[Spartan] should be shut down" and "I hope that happens before they start selling the things in Africa."  *Id*.  Because those, and other similar opinion statements cannot support a defamation claim, Count I of the Complaint should be dismissed for this reason as well.

PHIL1 8757010v.2

IV.     Spartan's Commercial Disparagement Claim Fails Because Spartan Failed To Plead Actual Pecuniary Damages

Spartan's claim for commercial disparagement lacks any allegation of specific damages resulting from Mr. Purrington's statements and therefore must be dismissed for this additional reason.  To plead a claim for commercial disparagement under Pennsylvania law, the plaintiff must allege "(1) a false statement; (2) that the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) that there is actual pecuniary loss; and (4) actual malice – that is, that the publisher either knew that the statement was false or acted in reckless disregard of its truth or falsity." *GOLO, LLC*, 310 F. Supp. 3d at 507; *see also Brooks Power Sys., Inc. v. Ziff Commc'ns, Inc.*, 1994 WL 444725, at *2 (E.D. Pa. Aug. 17, 1994) (citing *Menefee v. Columbia Broadcasting Sys., Inc.*, 329 A.2d 216 (Pa. 1976)) (hereinafter, "*Brooks*"); *McNulty v. Citadel Broadcasting Co.*, 58 Fed. App'x 556, 566 (3d Cir. 2003).   To prevail on a commercial disparagement claim, a plaintiff "must establish *direct* pecuniary loss resulting from the disparagement of the particular product."  *Brooks*, 1994 WL 444725, at *3 (emphasis in original); *McNulty*, 58 Fed. App'x at 567.  To show direct pecuniary loss, in turn, the plaintiff must demonstrate a diminution in sales or specific lost sales.  *Brooks*, 1994 WL 444725, at *3.  Spartan included not a single allegation in its complaint about any diminution in sales or specific lost sales directly caused by the statements about which it complains.  *See* Compl. ¶¶ 27, 33, 39.  Instead, Spartan merely asserts the legal conclusion that it has "suffered damages" due to Mr. Purrington's statements.  *See id.*  This Court need not consider those legal conclusions as true in deciding this motion.  *See GOLO, LLC*, 310 F. Supp. 3d at 503. Without any factual allegation of direct pecuniary loss caused by Mr. Purrington's statements, Spartan's commercial disparagement claim fails, and Count II of the Complaint should be dismissed in its entirety.

-11-

PHIL1 8757010v.2

V.      Spartan's Suit Is Barred Because It Is Not Registered To Do Business In The
        Commonwealth of Pennsylvania

Spartan cannot maintain this suit in its entirety because it is not registered to do business

in the Commonwealth of Pennsylvania.  Pennsylvania law requires foreign corporations to register

to do business in this Commonwealth.  If a foreign corporation is not registered, it cannot maintain

any action in a state court or in a federal court in Pennsylvania.  15 Pa. C.S.A. § 412; *Aberle*

*Hosiery Co. v. American Arbitration Ass'n*, 337 F. Supp. 90, 92 (E.D. Pa. 1972).  Spartan does not

allege that it is registered to do business in Pennsylvania, but rather only that it is a Mississippi

corporation with its principal place of business in Mississippi.  Compl. ¶ 1.  Indeed, a search of the

Pennsylvania Department of State's database demonstrates that it does not appear to be registered.

The Complaint should therefore be dismissed for this additional reason.

## CONCLUSION

For the reasons set forth above, Colin Purrington respectfully requests that the Court

dismiss the Complaint in its entirety, with prejudice, and grant such other and further relief as the

Court deems proper and just.  In the alternative, Mr. Purrington respectfully requests that the Court

schedule a hearing to determine the preliminary issue of Mr. Pennington's immunity pursuant to

the Pennsylvania Environmental Immunity Act, as required by 27 Pa. C.S.A. § 8303.

PHIL1 8757010v.2

March 25, 2020                                KLEHR HARRISON HARVEY BRANZBURG LLP


                                    By:  */s/ Paige M. Willan*
                                         Paige M. Willan
                                         Douglas F. Schleicher
                                         1835 Market Street, 14th Floor
                                         Philadelphia, PA 19103
                                         (215) 569-2700
                                         pwillan@klehr.com
                                         dschleicher@klehr.com

                                         *Attorneys for Defendant Colin Purrington*

-13-

## CERTIFICATION OF SERVICE

I hereby certify that on March 25, 2020, I served a true and correct copy of the foregoing

Memorandum of Law in Support of Defendant's Motion to Dismiss via this Court's electronic

filing system and via electronic mail on the below-listed counsel for Plaintiff AC2T, Inc.:

Evan L. Frank, Esq.
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
afrank@alflaw.net

*Counsel for Plaintiff AC2T, Inc.*

By: */s/ Paige M. Willan*
Paige M. Willan