Evan L. Frank, Esq.
Alan L. Frank Law Associates, P.C.
PA Bar No. 311994
135 Old York Road
Jenkintown, PA 19046
215-935-1000
215-935-1110 (fax)
efrank@alflaw.net
Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

AC2T, Inc., d/b/a Spartan Mosquito,    :
    :      Civil Action
      Plaintiff,    :      Case no. 2:19-cv-05946-RBS
    :
      v.    :      Jury Trial Demanded
    :
Colin Purrington,    :
    :
      Defendant.    :
_____:

## PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

# TABLE OF CONTENTS

I.     Summary .............................................................................................. 1

II.    Facts ..................................................................................................... 3

III.   Argument .............................................................................................. 7

       A.     Standard ........................................................................................ 7

       B.     Choice of Law – Mississippi law applies to this defamation
              case because the Plaintiff resides in Mississippi ........................ 8

       C.     The U.S. Supreme Court held in *McDonald v. Smith* that
              plaintiffs may sue for libelous statements in petitions to the
              government.  Because of *McDonald v. Smith*, courts have
              rejected the Defendant's understanding of the *Noerr-Pennington*
              doctrine ........................................................................................ 8

       D.     The Pennsylvania Environmental Immunity Act does not apply
              because this case is governed by Mississippi law, not
              Pennsylvania law.  Even under Pennsylvania law, the
              statements would not be protected because of the exclusion at
              27 Pa. C.S. § 8302(b)(1) for statements that are knowingly false
              or made with reckless disregard for their truth ........................... 11

       E.     The defamatory statements are actionable because they can be
              proven true or false ..................................................................... 12

       F.     Commercial Disparagement ......................................................... 19

       G.     Spartan is not required to register in Pennsylvania .................... 19

IV.    Conclusion ......................................................................................... 20

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................... 7

*Chevalier v. Animal Rehab. Ctr.*, 839 F. Supp. 1224 (N.D. Tex. 1993) ...... 1, 9, 11

*Chin v. Chrysler LLC*, 538 F.3d 272 (3d Cir. 2008) ................................ 8

*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 182 A.2d 751 (Pa. 1962) ...... 14, 18

*Dougherty v. Boyertown Times*, 547 A.2d 778 (Pa. Super. 1988) ............... 15, 18

*Franklin v. Thompson*, 722 So. 2d 688 (Miss. 1998) ................................ 12

*Franklin Prescriptions, Inc. v. N.Y. Times Co.*,
    267 F. Supp. 2d 425 (E.D. Pa. 2003) ................................................ 2, 8, 10, 11

*Hayne v. Innocence Project*,
    2011 U.S. Dist. LEXIS 5586 (S.D. Miss. Jan. 20, 2011) ..................... 14, 18

*Hardy Bros. Body Shop v. State Farm*, 848 F. Supp. 1276 (S.D. Miss. 1994) ...... 14, 18

*Holland v. Kennedy*, 548 So. 2d 982 (Miss. 1989) .................................. 14, 18

*Hoover v. Peerless Publ'ns, Inc.*, 461 F. Supp. 1206 (E.D. Pa. 1978) ........ 17

*MacElree v. Philadelphia Newspapers, Inc.*, 675 A.2d 1050 (Pa. 1996) ...... 14, 18

*McDonald v. Smith*, 472 U.S. 479 (1985) ................................. 1, 8, 9, 10, 11

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ............................... 12

*Mzamane v. Winfrey*, 693 F. Supp. 2d 442 (E.D. Pa. 2010) .................... 8, 11

*O'Neill v. Van Rossum*, 198 A.3d 427 (Pa. Super. 2018) ........................ 10

*Pittman v. Gannett River States Publ'g Corp.*, 836 F. Supp. 377 (S.D. Miss. 1993) ...... 17

*Raffensberger v. Moran*, 485 A.2d 447 (Pa. Super. 1984) ....................... 15, 19

*Wawa, Inc. v. Alexander J. Litwornia & Assocs.*, 817 A.2d 543 (Pa. Super. 2003) ...... 1, 11

*WE, Inc. v. City of Phila.*, 174 F.3d 322 (3d Cir. 1999) ......................... 1, 9

*Weber v. Lancaster Newspapers, Inc.*, 878 A.2d 63 (Pa. Super. 2005) ...... 14, 18


15 Pa. C.S. § 403(a)(1) .................................................................... 3, 19, 20

15 Pa. C.S. § 411(b) ....................................................................... 3, 19, 20

27 Pa. C.S. § 8302(b)(1) ................................................................. 2, 11, 12


Restatement (Second) of Torts, § 561(a) ............................................ 15, 19

Restatement (Second) of Torts, § 566 ............................................... 13

Restatement (Second) of Torts, § 571 ............................................... 15

Restatement (Second) of Torts, § 573 ............................................... 15, 17, 19

Restatement (Second) of Torts, § 578 ............................................... 17

I.      **Summary.**

The Court should deny the Defendant's motion for the following reasons:

1.      The Defendant argues that his statements are immune from a defamation suit under the *Noerr-Pennington* doctrine because he was petitioning the government.  Def. Brief, pages 6-8.  However, the U.S. Supreme Court held in *McDonald v. Smith* that plaintiffs may sue for defamatory statements within government petitions.  *McDonald v. Smith*, 472 U.S. 479, 484-85 (1985).  In that case, a politically active citizen sent letters to President Reagan, urging him not to appoint a lawyer as a U.S. Attorney because of the lawyer's rulings on civil rights while he was a state judge and his alleged violation of ethical rules.  *Id.* at 480.  The lawyer sued for defamation.  The Supreme Court held that there is no immunity from the defamation suit just because the defamation was within a petition to the government – in that case, a petition to the President.  *Id.* at 485-86.  Since the Supreme Court explicitly allows defamation suits arising out of government petitions, courts have rejected the Defendant's understanding of the *Noerr-Pennington* doctrine.  *WE, Inc. v. City of Phila.*, 174 F.3d 322, 327 (3d Cir. 1999); *Chevalier v. Animal Rehab. Ctr.*, 839 F. Supp. 1224, 1236 (N.D. Tex. 1993); *Wawa, Inc. v. Alexander J. Litwornia & Assocs.*, 817 A.2d 543, 546 (Pa. Super. 2003).  The Defendant's argument would not prevail in any event since it depends on facts from outside of the pleadings.  That the Defendant was petitioning the government is not apparent on the face of the defamatory statements.

1

2.      The Defendant relies exclusively on Pennsylvania law.  However, under

Pennsylvania choice of law, Mississippi substantive law applies because the Plaintiff

resides in Mississippi.  *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 267 F. Supp. 2d 425,

441 (E.D. Pa. 2003) ("… the Court is confronted with a defamation action and all

applicable Pennsylvania cases concerning this issue have applied the law of the state of

plaintiff's residence …").

3.      The Pennsylvania Environmental Immunity Act does not apply because this case

is governed by Mississippi substantive law, not Pennsylvania substantive law.  The

statements were also made with knowledge or reckless disregard for their falsity.

Complaint, ¶¶ 26, 32, and 38.  Under 27 Pa. C.S. § 8302(b)(1), the Act does not apply if

the statements are knowingly false or made with reckless disregard for their truth or

falsity.

4.      The defamatory statements are not protected as opinion because they are

falsifiable.  Among the defamatory allegations are that Spartan puts customers and their

families at risk of contracting diseases such as EEE and West Nile, that the product

helps spread invasive species, that Spartan is scamming customers, and that Spartan

lies to regulatory agencies.  The Defendant words some of his defamatory statements as

if they are the results of scientific experimentation, others as based on his knowledge

from his career in academia, and others as reflecting a consensus in the scientific

community.  By wording his statements as based on scientific rigor, the Defendant conveys to his audience that the statements are fact, not opinion.

5.      The Plaintiff alleges that the Defendant's conduct cause damages.  Complaint, ¶¶ 27, 33, and 39.  While commercial disparagement does require pecuniary loss, none of the authorities cited by the defense require the loss to be proven in the complaint itself. Since the Plaintiff does allege it was damaged, the Plaintiff should be permitted to prove it during discovery and at trial.

6.      Spartan is not required to register in Pennsylvania to maintain a suit here.  Under section 411(b), the prohibition on maintaining an action only applies to foreign companies who were otherwise required to register – that is, foreign companies who were already doing business in Pennsylvania.  15 Pa. C.S. § 411(b).  Under section 403(a)(1), maintaining an action or proceeding does not constitute doing business in Pennsylvania.  15 Pa. C.S. § 403(a)(1).  Since Spartan was not doing business in Pennsylvania as defined in the statute, and filing a suit does not constitute business, Spartan is not required to register.

**II.     Facts.**

Spartan is a Mississippi company with a principal place of business in Mississippi.  Complaint, ¶ 1.  The Defendant is an individual residing in Pennsylvania. Id., ¶ 2.  Spartan makes a product called the Spartan Mosquito Eradicator, which is a mosquito control system.  Id., ¶ 5.  The Defendant has been telling customers that the

product puts them and their families at risk of contracting diseases such as EEE and West Nile. Id. The Defendant tells customers that the product helps spread invasive species, that Spartan is scamming customers, and that Spartan lies to regulatory agencies. Id. He has sent similar defamatory statements to state regulatory agencies and asked them to outlaw the product. Id.

The Defendant had been obsessively defaming the Plaintiff for the four months leading up to the Complaint (which was filed in December). Id., ¶ 6. In that time he had posted over 90 comments about Spartan on other customers' reviews on Amazon, over 40 on Twitter, and 25 on Facebook. Id., ¶ 6. He has also written several articles about Spartan on his personal website. Id. Finally, he has sent similar defamatory statements to state regulatory agencies. Id.

The Defendant is a former biology professor at Swarthmore College. Id., ¶ 7. In some of his statements, he uses his academic credentials in order to give authority to his claims about Spartan. In some statements, he claims to have done scientific evaluations of the product. Id. By couching his statements in terms of undisclosed scientific evaluations and the Defendant's own career in academia, the Defendant conveys to his audience that his false allegations are not only factual, but supported by scientific rigor. Id. Some of his statements are also worded as if referencing other scientists' studies in order to make it appear that the Defendant's statements reflect consensus in the

scientific community, for example:  "I've corresponded with over 100 scientists and

public health officials who all agree…"  Id.,

The defamatory statements include:

• The Spartan Mosquito Eradicator is a complete scam.  I'm a scientist and
have evaluated them carefully.  I found that mosquitoes are not attracted to
the devices at all.  And I've corresponded with over 100 scientists and
public health officials who all agree that the devices attract nothing but fruit
flies, ants, picnic beetles, and yellowjackets.  And everyone agrees that the
solution inside (water, sugar, salt, and yeast) wouldn't kill mosquitoes even
IF mosquitoes managed to get inside (the holes are too small).  Indeed,
professionals openly laugh about this device and speculate why so many
people leave glowing testimonials.  But, sadly, it's not just a waste of money
– it puts people at risk of contracting mosquito-borne diseases.  I.e., if a
person relies on this device instead of, say, DEET, they are putting
themselves and their families at increased risk of getting bitten by a
mosquito carrying EEE, West Nile, etc.  This company is an embarrassment
for the state of Mississippi, which should have never allowed it to operate
in the first place.  It should be shut down, and several states (perhaps all)
are planning to do exactly that.  I hope that happens before they start selling
the things in Africa.

Complaint, Ex. A.

• Why should states issue "stop sell" orders on scams like the Spartan
Mosquito Eradicator?  Because such devices are putting people's health at
risk.

Complaint, Ex. B.

• This might be related to the efforts by @EPA and @amazon to remove items
that violate the Federal Insecticide, Fungicide & Rodenticide Act.  Spartan
Mosquito and distributors often make health claims e.g., which violate the
FIFRA 25(b) exemption it enjoys.

Complaint, Ex. C.

- Spartan Mosquito Eradicators provide ideal habitat (water, sugar, yeast) for larvae of spotted-wing drosophila (Drosophila suzukll), an invasive pest of berries and soft-skinned fruit trees. Once mature they escape through holes in the cap." (top) "The spotted-wing drosophila probably inflicts $1 billion in damage each year, too. And plenty of losses in Mississippi, (right @MSBugBlues?), the home state of the Spartan Mosquito Eradicator.

  Complaint, Ex. D.

- Here's a movie of the insects that ARE trapped inside a Spartan Mosquito Eradicator. Yes, there are larvae inside. Alive. And some of them are spotted-wing drosophila, an invasive pest of berries in the United States. So the devices are contributing to the spread of a pest.

  Complaint, Ex. E.

- Spartan Mosquito Eradicator operates in a regulatory loophole, though, because it *doesn't* contain a regulated pesticide. If it had actual insecticide it would absolutely need to convince regulators that the device killed mosquitoes. It's a successful scheme.

  Complaint, Ex. F.

- The above claim suggests Spartan Mosquito misled states in @eparegion2, @EPAregion3, @USEPASoutheast, @EPAregion6, @EPAregion7, @EPARegion8, @EPAregion9, and @EPAnorthwest when it declared sodium chloride is the active ingredient that kills mosquitoes (an equally inane idea).

  Complaint, Ex. G.

- Amazon has recently concluded that the Spartan Mosquito Eradicator is a scam and have pulled the device…

  Complaint, Ex. H.

- …The design is so flawed in so many ways it seems as if the company didn't even care. They just want to sell it to people who might not recognize it instantly as a scam.

Complaint, Ex. I.

- I've never seen a mosquito inside my Spartan Mosquito Eradicators and I've also never seen a mosquito near it or on it.  I looked through the company's website, Facebook page, and Instagram account and there's not a single photograph of a mosquito coming through one of those holes.  It's all a fiction to get gullible people to buy it.

Complaint, Ex. J.

- …just state that the seller has used deceptive advertising and that the product doesn't work.

Complaint, Ex. K.

Each of the statements is false and made with knowledge or reckless disregard for the statement's falsity.  Complaint, ¶ 26.  The statements were intended to cause financial loss to the Plaintiff, and the Plaintiff has suffered damages.  Id., ¶¶ 36 and 39.

## III.   Argument.

### A.   Standard.

To survive a 12(b) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  A complaint "does not need detailed factual allegations," but "requires more than labels and conclusions, and a formulaic recitation of the elements…" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**B.    Choice of Law – Mississippi law applies to this defamation case because the Plaintiff resides in Mississippi.**

Mississippi law applies because it is the state where the Plaintiff is domiciled.  In a diversity case, the Court must apply the choice of law of the forum state.  *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008).  Under Pennsylvania choice of law, the substantive law for a defamation case is the state where the plaintiff resides.  *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 471 (E.D. Pa. 2010) (so holding, and listing other cases with the same holding); *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 267 F. Supp. 2d 425, 441 (E.D. Pa. 2003) ("… the Court is confronted with a defamation action and all applicable Pennsylvania cases concerning this issue have applied the law of the state of plaintiff's residence …").  The same rule applies when the plaintiff is a corporation – its residence being its principal place of business.  *Franklin Prescriptions*, 267 F. Supp. 2d at 441.

Here, the Plaintiff is a Mississippi corporation with a principal place of business in Mississippi.  Complaint (ECF 1), ¶ 1.  Under Pennsylvania choice of law, the Court must apply Mississippi substantive law.

**C.    The U.S. Supreme Court held in *McDonald v. Smith* that plaintiffs may sue for libelous statements in petitions to the government.  Because of *McDonald v. Smith*, courts have rejected the Defendant's understanding of the *Noerr-Pennington* doctrine.**

In *McDonald v. Smith*, the U.S. Supreme Court held that plaintiffs may sue for libel in government petitions.  *McDonald v. Smith*, 472 U.S. 479, 484-85 (1985).  In that

case, the plaintiff was under consideration to be a United States Attorney.  *Id.* at 480.

The defendant wrote two letters to President Ronald Reagan about the plaintiff.  *Id.* at

481.  The letters alleged that the plaintiff violated civil rights while he was a state court

judge, violated professional ethics requirements, and engaged in fraud.  *Id.*  The first

letter was sent to Reagan when he was President-elect; the second was sent while he

was President.  *Id.* at n. 1.  The defendant described himself as a "politically active

American."  *Id.*  The letters were allegedly successful – the plaintiff claimed he was not

appointed as a United States Attorney because of the letters.  *Id.* at 481.

The defendant argued that his statements were not actionable because he was

petitioning the government – in this case directly petitioning the President.  *Id.* at 481-

82.  The Supreme Court rejected that argument.  Petitions to the government – even

directly to the President of the United States – are not protected from libel suits.  *Id.* at

485-86.

Relying on *McDonald*, the Third Circuit has recognized that the *Noerr-Pennington*

doctrine does not grant immunity from suit just because the defendant was petitioning

the government.  *WE, Inc. v. City of Phila.*, 174 F.3d 322, 327 (3d Cir. 1999) (citing

*McDonald v. Smith*, and holding that *Noerr-Pennington* does not grant immunity from

suit for petitioning).  Other courts have held the same.  *E.g., Chevalier v. Animal Rehab.

Ctr.*, 839 F. Supp. 1224, 1236 (N.D. Tex. 1993) (*McDonald v. Smith* explicitly allows libel

claims from petitions, so *Noerr-Pennington* cannot bar libel claims based on petitions).

In *McDonald*, the defendant directly petitioned the President.  Here, the defendant is only posting on social media.  It is not even apparent on the face of the defamatory documents that they are petitions.  That can only be established with the defense's use of facts from outside of the pleadings.  In *McDonald*, the defendant wrote to the President to warn him that a prospective government official was unsuited for the appointment – something that is clearly within the right to petition.  But in this case, it takes several leaps to get from the text of the Defendant's posts to a petition.  If a letter to the President is actionable for libel, then logically a tweet must be as well.

The Superior Court's holding in *O'Neill v. Van Rossum* does not apply here.  In *O'Neill*, the allegedly defamatory statements were actually true, and the complaint itself showed that the statements were true.  *O'Neill v. Van Rossum*, 198 A.3d 427 (Pa. Super. 2018) ("However, the trial court observed that Appellants' 'characterization of the statements as false is belied by the other allegations of Appellants' complaint,' and we agree.").  Mississippi law applies to this case under Pennsylvania choice of law because the Plaintiff resides in Mississippi.  *Franklin Prescriptions*, 267 F. Supp. 2d at 441.  Even if the Pennsylvania state courts chose to expand *Noerr-Pennington* beyond the U.S. Supreme Court's requirements (to bar claims the Supreme Court explicitly permitted in *McDonald v. Smith*), it would not apply here because there is no indication that the Mississippi courts have departed from the federal rule.

"The right to petition is guaranteed; the right to commit libel with impunity is not." *McDonald v. Smith*, 472 U.S. 479, 485, 105 S. Ct. 2787, 2791 (1985). Multiple courts addressing the same defense all make the same distinction as in *McDonald v. Smith*: the act of petitioning itself is protected, but libel within the petition is not protected. *Chevalier v. Animal Rehab. Ctr.*, 839 F. Supp. 1224, 1236 (N.D. Tex. 1993) ("Plaintiff does not sue because Defendants attempted to influence governmental decision mailing. Instead, Plaintiff takes issue with alleged defamation that occurred during that petitioning and in publications inducing the petitioning."). Similarly, the Pennsylvania Superior Court quoted *McDonald v. Smith's* famous line in the case *Wawa v. Alexander*: "The right to petition is guaranteed; the right to commit libel with impunity is not." *Wawa, Inc. v. Alexander J. Litwornia & Assocs.*, 817 A.2d 543, 546 (Pa. Super. 2003) (quoting *McDonald v. Smith*).

> **D.** **The Pennsylvania Environmental Immunity Act does not apply because this case is governed by Mississippi law, not Pennsylvania law. Even under Pennsylvania law, the statements would not be protected because of the exclusion at 27 Pa. C.S. § 8302(b)(1) for statements that are knowingly false or made with reckless disregard for their truth.**

The Pennsylvania Environmental Immunity Act does not apply because this case is governed by Mississippi substantive law, not Pennsylvania substantive law. *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 471 (E.D. Pa. 2010); *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 267 F. Supp. 2d 425, 441 (E.D. Pa. 2003). Even if Pennsylvania law applied, the statements would not be protected. Under section 8302(b)(1), the statute

11

does not protect statements that are knowingly false or made with reckless disregard for their truth or falsity.  27 Pa. C.S. § 8302(b)(1).  The Defendant's statements were made with knowledge or reckless disregard for their falsity.  Complaint, ¶¶ 26, 32, and 38; *see also* F.R.C.P 9(b) (malice, intent, knowledge, and other conditions of a person's mind may be alleged generally).  The statute also would not apply even under Pennsylvania law, at least at the pleading stage.  There is nothing on the face of the exhibits attached to the Complaint to suggest that these documents were government petitions.  Because the defense relies on facts from outside the pleadings, the Court cannot accept that argument at the pleading stage.

E.      **The defamatory statements are actionable because they can be proven true or false.**

Mississippi follows the U.S. Supreme Court's decision in *Milkovich v. Lorain* for determining when statements are fact or opinion, and when opinion statements are actionable because they imply undisclosed facts.  *Franklin v. Thompson*, 722 So. 2d 688, 693 (Miss. 1998).  A defamatory statement is actionable if it states or implies a false assertion of fact.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990).  A statement meets this standard if the stated or implied assertion is capable of being proven true or false. *Id.* at 22.  There is no wholesale defamation exemption for everything that can be characterized as opinion.  *Id.* at 18.  Often expressions of opinion imply the assertion of an objective fact, and if so they may be defamatory.  *Id.*  If the speaker states facts on which the opinion is based and those facts are false, or the speaker's assessment of them

12

is erroneous, there can be liability for defamation.  *Id.* at 18-19.  Alternatively, if the

speaker does not disclose the factual basis of the opinion, the statement may

nonetheless be actionable if it implies a false assertion of fact as the basis for the

opinion.  *Id.*  Couching the statement in terms of opinion such as "I think…" or "In my

opinion…" does not stop a claim for defamation if what follows otherwise meets the

standard for defamation.  *Id.* at 19.  A statement in the form of an opinion is still

defamatory if it implies the existence of undisclosed defamatory facts as the basis for

the opinion.  Restatement (Second) of Torts, § 566.

Each of the defamatory statements attached to the Complaint meets this

standard.

- The Spartan Mosquito Eradicator is a complete scam.  I'm a scientist and have evaluated them carefully.  I found that mosquitoes are not attracted to the devices at all.  And I've corresponded with over 100 scientists and public health officials who all agree that the devices attract nothing but fruit flies, ants, picnic beetles, and yellowjackets.  And everyone agrees that the solution inside (water, sugar, salt, and yeast) wouldn't kill mosquitoes even IF mosquitoes managed to get inside (the holes are too small).  Indeed, professionals openly laugh about this device and speculate why so many people leave glowing testimonials.  But, sadly, it's not just a waste of money – it puts people at risk of contracting mosquito-borne diseases.  I.e., if a person relies on this device instead of, say, DEET, they are putting themselves and their families at increased risk of getting bitten by a mosquito carrying EEE, West Nile, etc.  This company is an embarrassment for the state of Mississippi, which should have never allowed it to operate in the first place.  It should be shut down, and several states (perhaps all) are planning to do exactly that.  I hope that happens before they start selling the things in Africa.

Complaint, Ex. A.  Here, the Defendant states that the devices put people at risk of

contracting mosquito-borne diseases such as EEE or West Nile.  This statement is

falsifiable because the devices either do put people at risk of contracting diseases or

they do not.  The Defendant also alleges that the holes on the device are too small for

mosquitoes to enter, implying that the device cannot deal with mosquitoes because

mosquitoes never drink the solution inside.  This can also be proven true or false.  In

fact, Spartan has already proven it false with video of mosquitoes entering and leaving

the device.  Complaint, ¶ 5.

- Why should states issue "stop sell" orders on scams like the Spartan
  Mosquito Eradicator?  Because such devices are putting people's health at
  risk.

Complaint, Ex. B.  The allegation that the devices are "putting people's health at risk" is

also falsifiable – either they are a health risk, or they are not.  The allegation that the

device is a "scam", particularly in context with the Defendant's other statements, also

conveys that the Plaintiff is doing business dishonestly and deceiving people.  This sort

of allegation is defamatory under both Mississippi and Pennsylvania law, and it is one

of the traditional categories of per se defamation.  *Hayne v. Innocence Project*, 2011 U.S.

Dist. LEXIS 5586, at *27 n.3 (S.D. Miss. Jan. 20, 2011); *Hardy Bros. Body Shop v. State Farm*,

848 F. Supp. 1276, 1287-88 (S.D. Miss. 1994); *Holland v. Kennedy*, 548 So. 2d 982, 986-87

(Miss. 1989); *MacElree v. Philadelphia Newspapers, Inc.*, 675 A.2d 1050, 1054 (Pa. 1996);

*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 182 A.2d 751, 754 (Pa. 1962); *Weber v.*

*Lancaster Newspapers, Inc.*, 878 A.2d 63 (Pa. Super. 2005); *Dougherty v. Boyertown Times*,

547 A.2d 778, 783 (Pa. Super. 1988); *Raffensberger v. Moran*, 485 A.2d 447, 450 (Pa. Super.

1984); Restatement (Second) of Torts, §§ 561(a) and 573.

- This might be related to the efforts by @EPA and @amazon to remove items that violate the Federal Insecticide, Fungicide & Rodenticide Act.  Spartan Mosquito and distributors often make health claims e.g., which violate the FIFRA 25(b) exemption it enjoys.

Complaint, Ex. C.  This statement is false because the Plaintiff does not make health

claims about the Spartan Mosquito Eradicator.  Complaint, ¶ 24.  The statement also

accuses the Plaintiff of being dishonest in its business dealings and breaking federal

law, which is not only defamatory but within the traditional categories of per se

defamation.  Restatement (Second) of Torts, §§ 571 and 573.

- Spartan Mosquito Eradicators provide ideal habitat (water, sugar, yeast) for larvae of spotted-wing drosophila (Drosophila suzukll), an invasive pest of berries and soft-skinned fruit trees.  Once mature they escape through holes in the cap." (top) "The spotted-wing drosophila probably inflicts $1 billion in damage each year, too.  And plenty of losses in Mississippi, (right @MSBugBlues?), the home state of the Spartan Mosquito Eradicator.

Complaint, Ex. D.

- Here's a movie of the insects that ARE trapped inside a Spartan Mosquito Eradicator.  Yes, there are larvae inside.  Alive.  And some of them are spotted-wing drosophila, an invasive pest of berries in the United States.  So the devices are contributing to the spread of a pest.

Complaint, Ex. E.  These two statements (Exs. D and E) are also falsifiable – Spartan's

product either contributes to an invasive pest problem, or it does not.  By accusing the

Plaintiff of contributing to the spread of an invasive pest, the statements also invoke

connotations of environmental harm that are commonly associated with invasive pests.

- Spartan Mosquito Eradicator operates in a regulatory loophole, though, because it *doesn't* contain a regulated pesticide.  If it had actual insecticide it would absolutely need to convince regulators that the device killed mosquitoes.  It's a successful scheme.

Complaint, Ex. F.  This statement is false because the product does contain a

pesticide, and it is in fact regulated.  Complaint, ¶ 20.  The statement is

defamatory because it falsely alleges that the product is not even capable of

killing mosquitoes.  It is also defamatory because it accuses the Plaintiff of

dishonesty in its business – leaving a pesticide out of a pest-treatment product

just to avoid regulation.

- The above claim suggests Spartan Mosquito misled states in @eparegion2, @EPAregion3, @USEPASoutheast, @EPAregion6, @EPAregion7, @EPARegion8, @EPAregion9, and @EPAnorthwest when it declared sodium chloride is the active ingredient that kills mosquitoes (an equally inane idea).

Complaint, Ex. G.  This statement is defamatory since it explicitly accuses Spartan of

deceiving state governments.  That attributes to Spartan both dishonesty and legal

violations.  The statement is falsifiable – either the Plaintiff misled states, or it did not.

- Amazon has recently concluded that the Spartan Mosquito Eradicator is a scam and have pulled the device…

Complaint, Ex. H.  This statement is false because Amazon made no such conclusion,

and the device is not a scam.  Further, under the republication rule, it is no defense that

the Defendant frames his statement as something that Amazon said rather than something that he said himself.  *Hoover v. Peerless Publ'ns, Inc.*, 461 F. Supp. 1206, 1209 (E.D. Pa. 1978) ("one who republishes a libel is subject to liability just as if he had published it originally, even though he attributes the libelous statement to the original publisher, and even though he expressly disavows the truth of the statement"); *Pittman v. Gannett River States Publ'g Corp.*, 836 F. Supp. 377, 381 n.4 (S.D. Miss. 1993) (same); Restatement (Second) of Torts, § 578 (same).

- …The design is so flawed in so many ways it seems as if the company didn't even care.  They just want to sell it to people who might not recognize it instantly as a scam.

Complaint, Ex. I.  Here, the Defendant alleges that the Plaintiff engaged in deception of its customers because the statement is that "they just want to sell it to people who might not recognize it instantly as a scam."  The allegation that someone is being dishonest in their business or using deception is commonly the subject of defamation in both Pennsylvania and Mississippi.  This is also one of the traditional categories of defamation per se.  Restatement (Second) of Torts, § 573.  This can be proven true or false – either the Plaintiff was being deceptive, or it was not.

- I've never seen a mosquito inside my Spartan Mosquito Eradicators and I've also never seen a mosquito near it or on it.  I looked through the company's website, Facebook page, and Instagram account and there's not a single photograph of a mosquito coming through one of those holes.  It's all a fiction to get gullible people to buy it.

17

Complaint, Ex. J.  This statement is already proven false since Spartan has posted a video online showing mosquitoes entering and leaving Spartan's product.  Complaint, ¶ 5.  The Defendant next states that "it's all a fiction to get gullible people to buy it", accusing the Plaintiff of deceiving customers to dupe them into making a purchase. This sort of statement is defamatory under both Mississippi and Pennsylvania law and constitutes per se defamation under the Restatement.

- …just state that the seller has used deceptive advertising and that the product doesn't work.

Complaint, Ex. K.  Here, the Defendant explicitly accuses Spartan of "deceptive advertising", which is per se defamation because it accuses the Plaintiff of dishonesty and improper conduct in its trade or profession.

A statement that imputes to another conduct or character that is incompatible with the proper, honest, and lawful conduct of his or her business or profession is defamatory in both Mississippi and Pennsylvania.  *Hayne v. Innocence Project*, 2011 U.S. Dist. LEXIS 5586, at *27 n.3 (S.D. Miss. Jan. 20, 2011); *Hardy Bros. Body Shop v. State Farm*, 848 F. Supp. 1276, 1287-88 (S.D. Miss. 1994); *Holland v. Kennedy*, 548 So. 2d 982, 986-87 (Miss. 1989); *MacElree v. Philadelphia Newspapers, Inc.*, 675 A.2d 1050, 1054 (Pa. 1996); *Cosgrove Studio & Camera Shop, Inc. v. Pane*, 182 A.2d 751, 754 (Pa. 1962); *Weber v. Lancaster Newspapers, Inc., 878* A.2d 63 (Pa. Super. 2005); *Dougherty v. Boyertown Times*, 547 A.2d 778, 783 (Pa. Super. 1988) (statements disparaging doctor's professional competence and accusing him of attempting to commit a fraud upon patients and their

insurer were capable of defamatory meaning); *Raffensberger v. Moran*, 485 A.2d 447, 450

(Pa. Super. 1984) (charge that plaintiff-truck drivers were "breakdown artists," meaning

they intentionally broke down their equipment so that they could collect additional

wages without working, was capable of defamatory meaning).  Under the Restatement,

that is one of the traditional categories of per se defamation under section 573 and a

basis for liability for defaming a corporate plaintiff under section 561(a).  Restatement

(Second) of Torts, §§ 561(a) and 573.  All of the Defendants' statements can be proven

true or false, and all are defamatory under both Mississippi and Pennsylvania law.

> **F.      Commercial Disparagement.**

The Defendant argues that the commercial disparagement claim should be

dismissed because the Plaintiff did not "plead actual pecuniary damages." Def. Brief,

page 11.  F.R.C.P. 8 only requires a "short and plain statement of the claim."  F.R.C.P.

8(a)(2).  Here, the Plaintiff alleges that the Defendant's conduct cause damages.

Complaint, ¶¶27, 33, and 39.  While commercial disparagement does require pecuniary

loss, none of the authorities cited by the defense require the loss to be proven in the

complaint itself.  Since the Plaintiff does allege it was damaged, the Plaintiff should be

permitted to prove it during discovery and at trial.

> **G.      Spartan is not required to register in Pennsylvania.**

Under section 403(a)(1), maintaining an action or proceeding does not constitute

doing business in Pennsylvania.  15 Pa. C.S. § 403(a)(1).  Under section 411(b), the

prohibition on maintaining an action only applies to foreign companies who were

otherwise required to register – in other words, foreign companies who were doing

business in Pennsylvania without registering.  15 Pa. C.S. § 411(b).  Since section 403(a)

explicitly says that maintaining an action or proceeding does not constitute doing

business in Pennsylvania, section 411(b) does not apply.

**IV.     Conclusion.**

The Defendant has not met his burden at the 12(b) stage.  The motion must be

denied.

Respectfully submitted,


 /s/ Evan L. Frank

Evan L. Frank, Esq.

Alan L. Frank Law Associates, P.C.

PA Bar No. 311994

135 Old York Road

Jenkintown, PA 19046

215-935-1000

215-935-1110 (fax)

efrank@alflaw.net

Counsel for Plaintiff

April 7, 2020