IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AC2T, INC. *d/b/a* SPARTAN MOSQUITO : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 19-5946 |
| COLIN PURRINGTON : | |

MEMORANDUM

SURRICK, J.                                                               OCTOBER 22, 2020

Presently before the Court is Defendant's Motion to Dismiss. (ECF No. 6.) For the following reasons, Defendant's Motion will be granted in part and denied in part.

I. **BACKGROUND**[1]

In this two-count Complaint, Plaintiff AC2T, Inc. asserts claims against Defendant Colin Purrington for defamation (Count 1) and commercial disparagement (Count 2). On each count, Plaintiff seeks damages in excess of $75,000, interest, costs, attorney's fees, punitive damages, and an injunction prohibiting further defamatory statements and directing Defendant to retract the defamatory statements at issue in this matter. (Compl. 11-12, ECF No. 1.)

Plaintiff is a Mississippi corporation with its principal place of business in Mississippi. (*Id.* ¶ 1.) Plaintiff manufactures the Spartan Mosquito Eradicator. (*Id.* ¶¶ 5, 9.) The purpose of this product is to substantially reduce local mosquito populations. (*Id.* ¶ 10.)

---

[1] When considering a motion to dismiss, the Court must accept as true all factual allegations in the plaintiff's complaint and construe the facts alleged in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Defendant resides in Pennsylvania. (*Id.* ¶ 2.) Defendant made comments on product review websites and social media criticizing the Spartan Mosquito Eradicator. (*Id.* ¶ 5.) Over a period of several months, he posted over 150 comments about the product and Plaintiff on various online platforms. (*Id.* ¶ 6.) Defendant made the following claims: the product puts customers at risk for contracting Eastern Equine Encephalitis (EEE) and West Nile;[2] the product contributes to the spread of an invasive species; the product does not contain a pesticide; the product is not government regulated; mosquitos cannot fit inside the product to drink the insecticide; Plaintiff is scamming customers; Plaintiff lies to regulatory agencies; and Plaintiff makes health claims in violation of federal law. (Compl. ¶¶ 5-25.) Defendant made similar statements to state regulatory agencies asking them to revoke their approval of the Spartan Mosquito Eradicator. (*Id.* ¶¶ 5-6.) Defendant made these statements intending to cause Plaintiff financial loss. (*Id.* ¶ 36.) Defendant's comments alarmed potential customers. (*Id.* ¶¶ 14, 36.) As a result, Plaintiff suffered damages. (*Id.* ¶¶ 27, 33, 39.)

Defendant was previously a biology professor at Swarthmore College. He relied on his credentials as validation for the claims he made about Plaintiff's product. (*Id.* ¶ 7.) Defendant asserted that his claims were based on his personal evaluations of the product, and that several scientists had completed similar evaluations that corroborated his conclusions. (*Id.*) Despite Defendant's biology credentials, he lacks any special qualifications related to mosquitoes. (*Id.* ¶ 11.)

---

[2] EEE virus is a rare cause of brain infections and is commonly spread by mosquitoes. *See Eastern Equine Encephalitis*, Centers for Disease Control and Prevention, https://www.cdc.gov/easternequineencephalitis/index.html (accessed October 21, 2020). The West Nile Virus is also typically transmitted by mosquito bite and can cause fever and fatigue for an extended period of time in infected individuals. *See West Nile Virus*, Centers for Disease Control and Prevention, http://www.cdc.gov/westnile/index.html (accessed October 21, 2020).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler*, 578 F.3d at 211. Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements. . . ." *Iqbal*, 556 U.S. at 678.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Evaluation of a Rule 12(b)(6) motion entails a three-step analysis: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim"; (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the

3

assumption of truth'"; and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

Plaintiff alleges that Defendant made over 150 defamatory comments about Plaintiff's product on various websites and social media and that he made statements to state regulatory agencies asking them to revoke their approval of Plaintiff's product. Plaintiff asserts claims of defamation and commercial disparagement against Defendant.[3]

Defendant seeks dismissal of both claims with prejudice. Defendant argues that the Court should apply Pennsylvania law to this case. Plaintiff argues that Mississippi law applies. In addition, Defendant claims that Plaintiff's Complaint has not plausibly alleged the first element of defamation and the third element of commercial disparagement. Finally, Defendant argues that his comments are protected by the Noerr-Pennington Doctrine and the Pennsylvania Environmental Immunity Act. We address the issues raised by the parties in the following order: (1) choice-of-law; (2) elements of defamation and commercial disparagement; and

---

[3] Plaintiff attached the following exhibits to the Complaint: (A) an October 25, 2019 Facebook post; (B) an October 12, 2019 Twitter Post; (C) an October 10, 2019 Twitter post; (D) an October 14, 2019 Twitter post; (E) an undated comment on a product review website; (F) an October 11, 2019 Twitter post; (G) a November 7, 2019 Twitter post; (H) an undated Facebook post; (I) a September 9, 2018 Amazon product review; (J) a May 31, 2019 Amazon product review; and (K) a July 12, 2019 Amazon product review.

4

(3) application of the Noerr-Pennington Doctrine and the Pennsylvania Environmental Immunity Act.[4]

### A.     Choice-of-Law

Plaintiff and Defendant disagree on which state's law applies. Because this is a diversity suit, and Pennsylvania is the forum state, we apply Pennsylvania's choice-of-law principles to determine which state's laws should govern Plaintiff's claims. *See LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996).

We first consider whether a "true conflict" or "false conflict" exists between the laws of Pennsylvania and Mississippi. *Melmark, Inc. v. Schutt*, 206 A.3d 1096, 1104 (Pa. 2019). A "true conflict" exists when "there are relevant differences between the laws" and requires a court to "examine the governmental policies underlying each law" only if both jurisdictions' interests would be impaired by the application of the other jurisdiction's laws. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (internal citations omitted). A "false conflict" exists when "the laws of both states would produce the same result" or when "one of the states has no meaningful policy-based interest in the issue raised." *Id.* (internal citations omitted). If we find there is a "true" conflict, the next step is to determine "which state has the most significant relationship to the occurrence and the parties." *Id.* at 1107.

---

[4] Defendant also argues that Plaintiff lacks standing to maintain this action because it is not registered to do business in Pennsylvania. This argument is easily rejected. Defendant relies on a Pennsylvania statute, 15 Pa. Cons. Stat. § 412, which states that "[t]o register to do business in this Commonwealth, a foreign filing association or foreign limited liability partnership must deliver a foreign registration statement to the department for filing." The parties have cited to no cases, and we are aware of none, that would support precluding a Pennsylvania corporation, like Plaintiff, from filing a lawsuit in Federal court in the absence of a filed foreign registration statement. In any event, the statute does not apply here because maintaining a lawsuit does not constitute doing business. *See* 15 Pa. Cons. Stat. § 403(a)(1).

Plaintiff argues that Mississippi law should apply since it is a Mississippi corporation with its principal place of business in Mississippi. Plaintiff also argues that under Pennsylvania choice-of-law principles, the state where the plaintiff resides or maintains its principal place of business has the most significant relationship to the occurrence and the parties in defamation cases. *See, e.g., Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 471 (E.D. Pa. 2010) (collecting cases); *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 267 F. Supp. 2d 425, 441 (E.D. Pa. 2003) (collecting cases).

Defendant requests that this Court apply Pennsylvania law because he seeks to rely on protections provided under the Pennsylvania Environmental Immunity Act. This statute provides immunity from civil liability to a person who makes "an oral or written communication to a government agency relating to enforcement or implementation of an environmental law or regulation . . . where the . . . communication is aimed at procuring favorable governmental action." 27 Pa. Cons. Stat. § 8302(a). Defendant also argues that Pennsylvania law should apply because Pennsylvania has a relationship to the occurrence and the parties. Defendant has a permanent residency in Pennsylvania, making it the most likely location where he made his online comments about the Spartan Mosquito Eradicator.

Plaintiff's Complaint asserts a claim of commercial disparagement, which is not currently recognized by Mississippi but is recognized in Pennsylvania. *See Hayne v. Innocence Project*, No. 09-218, 2011 U.S. Dist. LEXIS 5586, at *37 (S.D. Miss. Jan. 20, 2011) ("Mississippi has not yet recognized the tort of injurious falsehood. It is a common law tort also known as trade libel, commercial disparagement, and slander of title.") (internal quotation marks omitted) (citing *Smith v. Magnolia Lady, Inc.*, 925 So. 2d 898, 906 (Miss. Ct. App. 2006)); *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 408 (3d Cir. 1983) (explaining that defamation and commercial

6

disparagement are two distinct torts under Pennsylvania law). Additionally, both Mississippi and Pennsylvania recognize defamation *per se* so there is no true conflict between the two laws. *See Lawrence v. Evans*, 573 So. 2d 695, 698 (Miss. 1990); *see generally, Sweeney v. Phila. Record Co.*, 126 F.2d 53 (Pa. 1942). As such, the Court finds the conflict between Mississippi and Pennsylvania law is a false conflict as there is only one interested state. *See Fouad v. Milton Hershey Sch. & Tr.*, No. 19-253, 2020 U.S. Dist. LEXIS 29364, at *30-31 (M.D. Pa. Feb. 19, 2020) (finding New York law applied because "we would be hard-pressed to find that Pennsylvania has any interest in this claim in the litigation, considering that it does not recognize [a cause of action for *prima facie* tort] within its body of law.").

Given the purpose behind the Pennsylvania Environmental Immunity Act and the fact that Plaintiff has alleged a claim that only Pennsylvania recognizes, we are persuaded that Pennsylvania is the only state with a policy-based interest in the issues raised. *See Penllyn Greene Associates, L.P. v. Clouser*, 890 A.2d 424, 433-34 (Pa. Commw. Ct. 2005) (stating that the purpose of the Pennsylvania Environmental Immunity Act is to "protect those persons targeted by frivolous lawsuits based on their constitutionally protected *government petitioning* activities" and "encourage and open the lines of communication to those government bodies clothed with the authority to correct or enforce our environmental laws and regulations.") (emphasis in original). Thus, Pennsylvania law applies.

**B.     Elements of Defamation and Commercial Disparagement**

The first count alleged by Plaintiff in the Complaint is defamation. A claim of defamation under Pennsylvania law consists of the following five elements:

1. The defamatory character of the communication.
2. Its publication by the defendant.
3. Its application to the plaintiff.
4. The understanding by the recipient of its defamatory meaning.

7

     5. The understanding by the recipient of it as intended to be applied to the plaintiff.

*Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2013) (internal citations omitted).

    Defendant argues only that the Complaint does not plausibly allege the first element, i.e. the defamatory character of the communication. Defendant asserts that the comments cannot be considered defamatory since he was expressing his opinion rather than presenting facts. Defendant cites a prior decision of this Court that states, "[e]xpressions of opinions, that rise only to the level of annoyance or embarrassment, do not provide a basis for a defamation claim." *Kreimer v. Philadelphia Inquirer, Inc.*, No. 03-6669, 2004 U.S. Dist. LEXIS 10077, at *7 (E.D. Pa. May 27, 2004).

    In *Kreimer*, the defendant had published an article referring to the plaintiff as a "drifter." *Id.* at *2. We dismissed the defamation claim because "we simply cannot conclude that Defendant's use of the term 'drifter' rises to the level of defamation contemplated by the Pennsylvania courts." *Id.* at *8. Here, in contrast, Defendant allegedly made comments online that accused Plaintiff of, *inter alia*, putting people at risk of contracting diseases, spreading an invasive species, violating federal law, misleading state agencies, scamming customers, and using deceptive advertising. Unlike the term "drifter" in *Kreimer*, Defendant's alleged comments about Plaintiff and its product rise well beyond the level of annoyance or embarrassment and form a basis for a defamation claim under Pennsylvania law. *See, e.g., Patel v. Patel*, No. 14-2949, 2015 U.S. Dist. LEXIS 149571, at *12-13 (E.D. Pa. Nov. 4, 2015) ("A statement is considered defamation *per se* relating to business misconduct when the speaker imputes to another conduct, characteristics, or a condition that would adversely affect him in his lawful business or trade.") (internal citations and quotation marks omitted).

In addition, the U.S. Supreme Court does not recognize "a wholesale defamation exemption for anything that might be labeled 'opinion.' . . . [E]xpressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). "Simply couching such statements in terms of opinion does not dispel these implications." *Id.* at 19. For example, "'[i]n my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'" *Id.* Only "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Id.* at 20.

Defendant's alleged comments plausibly contain a provably false factual connotation. For instance, in some of the comments, Defendant stated his credentials and claimed that he had personally tested the product and had corroborated his conclusions about the product with over 100 scientists. Defendant's argument against the first element falls short. Therefore, his motion to dismiss Count 1 of the Complaint will be denied.

The second count alleged by Plaintiff in the Complaint is commercial disparagement. A claim of commercial disparagement under Pennsylvania law consists of the following four elements:

1. the statement is false;
2. the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss;
3. pecuniary loss does in fact result; and
4. the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Zerpol Corp.*, 561 F. Supp. at 409. Defendant disputes only the third element, i.e., that Plaintiff suffered any pecuniary loss, since the Complaint lacks any allegation of specific financial damages that resulted from Defendant's comments.

9

Plaintiff alleges that Defendant's statements disparaging Plaintiff's product were intended to dissuade potential customers and cause Plaintiff financial loss. Even if this is true, "[t]he defining hallmark of a trade disparagement claim is the requirement that a plaintiff plead pecuniary loss with considerable specificity." *Universal Elec. Corp. v. Baldwin*, No. 17-00842, 2018 U.S. Dist. LEXIS 133294, at *42 (W.D. Pa. Aug. 1, 2018). "Direct pecuniary loss may be established through allegations demonstrating either a general diminution in sales or specific lost sales." *Id.* at *42-43 (citation omitted). While Plaintiff alleges that it suffered damages as a result of Defendant's statements, Plaintiff fails to allege any specific pecuniary loss. *See, e.g., id.* at *45 (dismissing Pennsylvania commercial disparagement claim because the complaint "fails to plead a reduction in sales over a substantial period, [and] fails to attribute the loss of sales to the disparaging publications."); *KDH Elec. Sys. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 806 (E.D. Pa. 2011) ("Here, the only allegation that Curtis makes as to damages is that '[p]ecuniary loss did in fact result to CTL and Dr. Curtis.' Because this conclusory allegation cannot satisfy Curtis's burden under Pennsylvania law, the Court dismisses [the count of Pennsylvania commercial disparagement] as to all counterclaim defendants for failure to state a claim."); *Corr. Med. Care, Inc. v. Gray*, No. 07-2840, 2008 U.S. Dist. LEXIS 6596, at *61-62 (E.D. Pa. Jan. 30, 2008) (dismissing Pennsylvania commercial disparagement claim because "plaintiffs have not alleged with any plausibility that pecuniary loss resulted from the email. They have provided no factual allegations of causation and no factual allegations of particular customers or contracts lost because of this email."). Since Plaintiff has failed to allege any specific pecuniary loss it suffered as a result of Defendant's comments, Defendant's motion to dismiss Count 2 of the Complaint will be granted.

### C. Application of the Noerr-Pennington Doctrine and the Pennsylvania Environmental Immunity Act

Defendant claims that his comments about Plaintiff's product are protected by the Noerr-Pennington Doctrine, since they were petitions to government agencies and officials. "The *Noerr/Pennington* doctrine protects 'the right of the people . . . to petition the government for a redress of grievances.'" *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 131 n.13 (3d Cir. 2005) (quoting U.S. Const. amend. I). The Noerr-Pennington Doctrine originated in the context of federal anti-trust litigation but has been extended over the years to protect people who petition the government for other reasons. *See WE, Inc. v. City of Phila., Dep't of Licenses & Inspections*, 174 F.3d 322, 326-27 (3d Cir. 1999). "The *Noerr-Pennington* doctrine prevents an individual from being held liable for exercising his First Amendment right to petition the government." *Logan v. Salem Baptist Church of Jenkintown*, No. 10-0144, 2010 U.S. Dist. LEXIS 86916, at *14 (E.D. Pa. Aug. 17, 2010).

Defendant also argues that his comments are protected by the Pennsylvania Environmental Immunity Act, since they were made in the interest of enforcing environmental laws and regulations. *See* 27 Pa. Cons. Stat. § 8302(a). However, the Pennsylvania Environmental Immunity Act does not provide immunity if:

> the allegation in the action or any communication to the government is not relevant or material to the enforcement or implementation of an environmental law or regulation and:
>
> (1) the allegation in the action or communication is knowingly false, deliberately misleading or made with malicious and reckless disregard for the truth or falsity;
>
> (2) the allegation in the action or communication is made for the sole purpose of interfering with existing or proposed business relationships; or
>
> (3) the oral or written communication to a government agency relating to enforcement or implementation of an environmental law or regulation is later determined to be a wrongful use of process or an abuse of process.

27 Pa. Cons. Stat. § 8302(b).

At this juncture, it is too early to tell if Defendant's alleged comments are protected by the Noerr-Pennington Doctrine or the Pennsylvania Environmental Immunity Act. The Complaint alleges that Defendant made over 150 comments online about Plaintiff's product; however, the Complaint includes only a few examples of these alleged comments. For example, based upon the Complaint, we do not know whether all Defendant's online comments were petitions to the government or whether all Defendant's comments were knowingly false, deliberately misleading, or made with malicious and reckless disregard for their truth or falsity. *See, e.g., Logan*, 2010 U.S. Dist. LEXIS 86916, at *14-16 (denying motion to dismiss and noting that "the Noerr-Pennington doctrine does not provide immunity from suit, and, rather, is a defense that requires factual determinations that cannot appropriately be made at this stage"); *Penllyn Greene Assocs., L.P.*, 890 A.2d at 433 ("When determining whether a communication is entitled to immunity, the court must look to the nature of the statement keeping in mind the intended audience and the purpose of the communication. . . . [The Pennsylvania Environmental Immunity Act] does not perfunctorily immunize all communications merely because they concern an environmental issue under consideration or review by a government body."). Accordingly, Defendant's motion to dismiss these claims under the Noerr-Pennington Doctrine and the Pennsylvania Environmental Immunity Act is premature. If, after discovery, Defendant believes that his statements are protected by the Noerr-Pennington doctrine or the Pennsylvania Environmental Immunity Act, he can renew his arguments at that time.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.