**Evan L. Frank, Esq. (#311994)**
**Alan L. Frank Law Associates, P.C.**
**135 Old York Road**
**Jenkintown, PA 19046**
**215-935-1000/ 215-935-1110 (fax)**
**efrank@alflaw.net**
**Counsel for Plaintiff**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AC2T, Inc., d/b/a Spartan Mosquito,** | : | |
| | : | Civil Action |
| Plaintiff, | : | Case Number: 2:19-cv-05946-RBS |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| **Colin Purrington,** | : | |
| | : | |
| Defendant. | : | |

# FIRST AMENDED COMPLAINT

## Parties

1.  AC2T, Inc. is a Mississippi corporation with a principal place of business in Mississippi. AC2T, Inc. does business as "Spartan Mosquito."

2.  Colin Purrington is an adult individual residing in Swarthmore, Pennsylvania.

## Jurisdiction and Venue

3.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

4. Venue is proper under 28 U.S.C. § 1391(b)(1) because the only Defendant resides in this District.

**Summary**

5. This is a defamation case. The Plaintiff makes a product called the Spartan Mosquito Eradicator, which is a mosquito control system. The Defendant has been telling customers that the product puts them and their families at risk of contracting diseases such as EEE and West Nile. He tells customers that the product helps spread an invasive species, that Spartan Mosquito is scamming customers, and that Spartan Mosquito lies to regulatory agencies. The Defendant makes false allegations that the product does not even contain a pesticide (it does), that leaving out the pesticide lets the product avoid government regulation (it is in fact government-regulated), and that mosquitoes cannot fit inside the product to drink the insecticide (they can, and there is literally a video on Spartan's website of them doing so). He has sent similar defamatory statements to state regulatory agencies and asked them to outlaw the product.

6. The Defendant has been obsessively defaming the Plaintiff for the past four months. In that time on social media alone, he has posted over 90 such comments on other customers' reviews on Amazon, over 40 on Twitter, and 25 on Facebook. He has also written several articles about Spartan Mosquito on his personal website.

Finally, he has been sending similar defamatory statements to state regulatory agencies and asking them to withdraw their approval of the Spartan Mosquito Eradicator.

    7.    The Defendant is a former biology professor at Swarthmore College. In some of his statements, he uses his academic credentials in order to give authority to his claims about Spartan Mosquito. In some statements, he claims to have done scientific evaluations of the product. By couching his statements in terms of undisclosed scientific evaluations and the Defendant's own career in academia, the Defendant conveys to the audience that his false allegations are not only factual, but are supported by scientific rigor. Some of his statements are also worded as if referencing other scientists' studies in order to make it appear that the Defendant's statements reflect consensus in the scientific community (e.g., "I've corresponded with over 100 scientists and public health officials who all agree…").

    8.    The Defendant has repeatedly made false allegations concerning the performance of the Spartan Mosquito Eradicator, the science behind the product, the health consequences of its use, and the Plaintiff's marketing. For example:

- The Spartan Mosquito Eradicator is a complete scam. I'm a scientist and have evaluated them carefully. I found that mosquitoes are not attracted to the devices at all. And I've corresponded with over 100 scientists and public health officials who all agree that the devices attract nothing but fruit flies, ants, picnic beetles, and yellowjackets. And everyone agrees that the solution inside (water, sugar, salt, and yeast) wouldn't kill mosquitoes even IF mosquitoes managed to get inside (the holes are too small). Indeed, professionals openly laugh about this device and speculate why so many people leave glowing testimonials. But, sadly, it's not just a waste of money – it puts

3

people at risk of contracting mosquito-borne diseases. I.e., if a person relies on this device instead of, say, DEET, they are putting themselves and their families at increased risk of getting bitten by a mosquito carrying EEE, West Nile, etc. This company is an embarrassment for the state of Mississippi, which should have never allowed it to operate in the first place. It should be shut down, and several states (perhaps all) are planning to do exactly that. I hope that happens before they start selling the things in Africa.

Exhibit A.

- Why should states issue "stop sell" orders on scams like the Spartan Mosquito Eradicator? Because such devices are putting people's health at risk.

Exhibit B.

- This might be related to the efforts by @EPA and @amazon to remove items that violate the Federal Insecticide, Fungicide & Rodenticide Act. Spartan Mosquito and distributors often make health claims e.g., which violate the FIFRA 25(b) exemption it enjoys.

Exhibit C.

- Spartan Mosquito Eradicators provide ideal habitat (water, sugar, yeast) for larvae of spotted-wing drosophila (Drosophila suzukll), an invasive pest of berries and soft-skinned fruit trees. Once mature they escape through holes in the cap." (top) "The spotted-wing drosophila probably inflicts $1 billion in damage each year, too. And plenty of losses in Mississippi, (right @MSBugBlues?), the home state of the Spartan Mosquito Eradicator.

Exhibit D.

- Here's a movie of the insects that ARE trapped inside a Spartan Mosquito Eradicator. Yes, there are larvae inside. Alive. And some of them are spotted-wing drosophila, an invasive pest of berries in the United States. So the devices are contributing to the spread of a pest.

Exhibit E.

- Spartan Mosquito Eradicator operates in a regulatory loophole, though, because it *doesn't* contain a regulated pesticide. If it had actual insecticide it would absolutely need to convince regulators that the device killed mosquitoes. It's a successful scheme.

Exhibit F.

- The above claim suggests Spartan Mosquito misled states in @eparegion2, @EPAregion3, @USEPASoutheast, @EPAregion6, @EPAregion7, @EPARegion8, @EPAregion9, and @EPAnorthwest when it declared sodium chloride is the active ingredient that kills mosquitoes (an equally inane idea).

Exhibit G.

- Amazon has recently concluded that the Spartan Mosquito Eradicator is a scam and have pulled the device…

Exhibit H.

- …The design is so flawed in so many ways it seems as if the company didn't even care. They just want to sell it to people who might not recognize it instantly as a scam.

Exhibit I.

- I've never seen a mosquito inside my Spartan Mosquito Eradicators and I've also never seen a mosquito near it or on it. I looked through the company's website, Facebook page, and Instagram account and there's not a single photograph of a mosquito coming through one of those holes. It's all a fiction to get gullible people to buy it.

Exhibit J.

- …just state that the seller has used deceptive advertising and that the product doesn't work.

Exhibit K.

## Facts

9. Spartan Mosquito makes a product called the Spartan Mosquito Eradicator, which is a mosquito control system.

10. Spartan Mosquito Eradicators are designed to substantially reduce a local mosquito population.

11. The Defendant is a former biology professor at Swarthmore College. However, he does not have any special qualifications concerning mosquitoes.

12. The Plaintiff is aware of approximately 150 statements by the Defendant concerning either Spartan Mosquito (the company itself) or the Spartan Mosquito Eradicator (the product). The defamatory statements appear on Amazon.com, Facebook.com, Twitter.com, and the Defendant's own website.

13. For example, on October 25, 2019, The Defendant wrote:

> The Spartan Mosquito Eradicator is a complete scam. I'm a scientist and have evaluated them carefully. I found that mosquitoes are not attracted to the devices at all. And I've corresponded with over 100 scientists and public health officials who all agree that the devices attract nothing but fruit flies, ants, picnic beetles, and yellowjackets. And everyone agrees that the solution inside (water, sugar, salt, and yeast) wouldn't kill mosquitoes even IF mosquitoes managed to get inside (the holes are too small). Indeed, professionals openly laugh about this device and speculate why so many people leave glowing testimonials. But, sadly, it's not just a waste of money – it puts people at risk of contracting mosquito-borne diseases. I.e., if a person relies on this device instead of, say, DEET, they are putting themselves and their families at increased risk of getting bitten by a mosquito carrying EEE, West Nile, etc. This company is an embarrassment for the state of Mississippi, which should have never allowed it to operate

> in the first place.  It should be shut down, and several states (perhaps all) are planning to do exactly that.  I hope that happens before they start selling the things in Africa.

Exhibit A.

14.     The message makes the false statement that the product puts customers at risk of contracting diseases such as West Nile or EEE.  Because the statement makes false allegations about the physical health and wellbeing of customers, the statement tends to cause fear and alarm.  The wording "themselves **and their families** at increased risk…" exacerbates this invoking more alarm in potential customers.

15.     The message also makes the false statement that the holes at the top of the device are too small for mosquitoes to enter.  The statement is false – in fact, Spartan has posted videos on its website of mosquitoes entering and exiting the holes.  Since the false statement attempts to undermine the essential function of the product (mosquitoes enter, drink the solution, and then leave) it conveys to the reader that the product designed to control mosquitoes literally cannot do anything about mosquitoes.

16.     The message also makes the false statement that the devices do not attract mosquitoes.  By making another false statement that goes to the manner in which the product works (the device attracts the mosquitoes in the first place, so that they can drink the solution), the statement conveys to the reader that product cannot work.

17.     The message also begins by stating that the product is a scam. By alleging that the product is a scam, the Defendant attacks the honesty and integrity of the

Plaintiff. By making that allegation in context with other allegations about the danger to customers, the message conveys that it is customers who are being scammed.

18. The message also states that the author is a scientist himself, that he has evaluated the product carefully, and that he has corresponded with over 100 scientists and public health officials who are all in agreement. By couching the statement in such terms, the Defendant conveys not only that the statements are factual, but that there is also a scientific certainty.

19. Also on October 25, 2019, the Defendant wrote a false statement that the devices are contributing to the spread of an invasive species, the spotted-wing drosophila. Exhibit E. The statement is defamatory because by alleging that the statement contributes to the spread of an invasive species, it invokes connotations of environmental harm that are associated with invasive species.

20. On October 11, 2019, the Defendant wrote that "Spartan Mosquito Eradicator operates in a regulatory loophole, though, because it *doesn't* contain a regulated pesticide. If it had actual insecticide it would absolutely need to convince regulators that the device killed mosquitoes." Exhibit F. The statement is false because the product does contain a pesticide, and it is in fact regulated. The statement is defamatory because it attempts to make it appear that the product is not even capable of killing mosquitoes for lack of a pesticide. The Defendant frames the statement in terms

of the false allegation that the product is in a regulatory loophole by not having a pesticide at all.

21. In the same message, the Defendant wrote, "It's a successful scheme." In a follow-up message, the Defendant then wrote that it is "marketed to  who are predisposed to believe the name is truthful." These two statements directly attack the honesty and business practices of the Plaintiff. The statements are also defamatory in the context of beginning of the message – the Defendant alleges that the Plaintiff dupes customers by first not including a pesticide (which is false, there is a pesticide) and then avoiding regulation (which is also false, the product is regulated).

22. On October 14, 2019, the Defendant wrote the false statement that "Spartan Mosquito Eradicators provide ideal habitat (water, sugar, yeast) for larvae of spotted-wing drosophila (Drosophila suzukii), an invasive pest…" Exhibit D. The statement is defamatory because by alleging that the statement contributes to the spread of an invasive species, it invokes connotations of environmental harm that are associated with invasive species.

23. On October 12, 2019, the Defendant wrote the false statement that the product is "putting people's health at risk". Exhibit B. The statement is defamatory because it tries to make users fear for their personal health. The statement also begins by calling the product a scam, which in context both attacks the honesty of the Plaintiff and conveys that deception is used in selling the product.

24. On October 10, 2019, the Defendant wrote that "Spartan Mosquito and distributors often make health claims e.g., which violate the FIFRA 25(b) exemption it enjoys." Exhibit C. The statement is false because the Plaintiff does not make health claims about the Spartan Mosquito Eradicator. By attributing false statements to the Plaintiff in the context of federal law, the statement also falsely conveys that the Plaintiff is breaking federal law.

25. The Defendant has also made dozens of statements that the product is a scam, that the company deceives customers or takes advantage of gullible people, or similar allegations.

26. The Defendant made the statements either with knowledge of their falsity or with reckless disregard for their falsity.

27. As a result of the Defendant's conduct, the Plaintiff has suffered damages.

## COUNT I
## DEFAMATION

28. The Plaintiff incorporates by reference the foregoing allegations.

29. The statements at issue have a defamatory character because they falsely accuse the Plaintiff of putting people at risk of contracting diseases; spreading an invasive species; violating federal law; misleading state agencies; scamming customers; and using deceptive advertising.

30. Many of the statements are defamatory per se because they accuse the Plaintiff of acting improperly or committing misconduct with regards to its business; others accuse the Plaintiff of spreading diseases.

31. The recipients of the defamatory statements understood both the defamatory character of the statements and the statements' application to the Plaintiff.

32. The Defendant acted with knowledge of the statements' falsity or reckless disregard for the statements' falsity.

33. As a result of the Defendant's conduct, the Plaintiff has suffered damages.

**WHEREFORE,** the Plaintiff demands judgment in its favor and against the Defendant for damages in excess of $75,000, interest, costs, attorney's fees, punitive damages, an injunction prohibiting further defamatory statements and directing the Defendant to retract those complained of in this case, and such other relief as the Court may deem just and proper.

## COUNT II
## COMMERCIAL DISPARAGEMENT

34. The Plaintiff incorporates by reference the foregoing allegations.

35. The statements at issue have a commercially disparaging character because they make false allegations about the Plaintiff's product: that it puts people at risk of contracting diseases; spreads an invasive species; violates federal law; got to market through misleading state agencies; and is marketed to customers deceptively.

36. Many of the Defendants' statements rise to the level of defamatory per se because they accuse the Plaintiff of acting improperly or committing misconduct with regards to its business; others accuse the Plaintiff of spreading diseases. For example, the statement in Exhibit A accuses the Plaintiff of putting customers "and their families" at risk of contracting diseases, and that the product does not do anything about mosquitoes. Similarly, Exhibit A states that the product is a scam, which attacks the honesty and integrity of the Plaintiff. Exhibit E accuses the Plaintiff of spreading an invasive species. Exhibit F states, "It's a successful scheme." In a follow-up message, the Defendant then wrote that it is "marketed to folks who are predisposed to believe the name is truthful." Exhibit B includes the language, "putting people's health at risk," and also contains the accusation of a scam. Exhibit C accuses the Plaintiff of violating federal law.

37. The statements were intended to cause financial loss to the Plaintiff, in that their purpose was to disparage the Plaintiff's product in order to dissuade potential customers.

38. The recipients of the statements understood both the commercially disparaging character of the statements and the statements' application to the Plaintiff.

39. The Defendant acted with knowledge of the statements' falsity or reckless disregard for the statements' falsity.

40. As a result of the Defendant's conduct, the Plaintiff has suffered damages.

**WHEREFORE,** the Plaintiff demands judgment in its favor and against the Defendant for damages in excess of $75,000, interest, costs, attorney's fees, punitive damages, an injunction prohibiting further defamatory statements and directing the Defendant to retract those complained of in this case, and such other relief as the Court may deem just and proper.

Respectfully submitted,

  /s/  *Evan L. Frank*
Evan L. Frank, Esq.  (PA #311994)
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
215-935-1000/ 215-935-1110 (fax)
afrank@alflaw.net
Counsel for Plaintiff

November 12, 2020

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury for all counts so triable.

Respectfully submitted,

  /s/  *Evan L. Frank*
Evan L. Frank, Esq. (PA #311994)
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
215-935-1000/ 215-935-1110 (fax)
afrank@alflaw.net
Counsel for Plaintiff

November 12, 2020